IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

JESUS RAMIREZ SILGUERO,            )
TDCJ No. 1192302,                  )
                    Plaintiff,     )
                                   )
v.                                 )            Civil No. 7:10-CV-050-O
                                   )
EDDIE C. WILLIAMS, *et al.*,       )
                    Defendants.    )

MEMORANDUM OPINION AND ORDER

        This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by an inmate currently

confined in the Robertson Unit of the Texas Department of Criminal Justice in Abilene, Texas.  The

Defendants are employees of the Texas Department of Criminal Justice.

        Plaintiff claims that, when he was housed in the James V. Allred Unit, he was subjected to

excessive force at the hands of prison guards.  Amended Complaint ¶ V.  He alleges that, after the

use of force, he was denied medical care for injuries resulting from the force.  *Id.*  Silguero also

alleges that he suffered retaliation from Defendants because he filed grievances and a prior lawsuit.

*See* Plaintiff's Answers to the Court's Questions.  Plaintiff seeks $20,000 in monetary damages from

each Defendant.  Amended Complaint ¶ VI.  In an attempt to better understand the factual basis of

Plaintiff's claims, a questionnaire was issued to him by the Court.  Plaintiff filed his answers and,

for purposes of the Court's review at this stage of litigation, the facts stated by Plaintiff are assumed

to be true.  However, conclusory allegations and legal conclusions are insufficient to state a claim.

The Plaintiff, Jesus Ramirez Silguero, claims that, on December 3, 2009, shortly after dinner, he opened the food slot in his cell door and tied it down with a piece of sheet.  Amended Complaint ¶ V.  When Sgt. Schmid arrived at Plaintiff's cell, Plaintiff told Schmid that he would have to use gas and a 5-man team to regain control of the food slot.  *Id.*  Schmid informed Plaintiff that he would pay for making him work and left the cell area.  *Id.*  A few moments later, Schmid returned with the 5-man team, a video camera operator, and a nurse.  *Id.*  The team brought with them a winch, a gurney and an "obstruction bar."  *Id.*  Plaintiff had jammed his cell door shut, covered the cell window with paper, and pushed his mattress up against the cell door to prevent gas from entering his cell. *Id.* Sgt. Schmid ordered Plaintiff to remove the obstruction from his cell door, uncover the cell window, and submit to a strip search.  *Id.*  Plaintiff refused to comply.  *Id.*

Using the obstruction bar, the 5-man team pushed Plaintiff's mattress away from the sell door and sprayed Plaintiff with a full can of gas.  *Id.*  Still, Plaintiff refused to comply with orders.  *Id.*  Schmid once again directed Plaintiff to comply.  *Id.*  When Plaintiff refused, he was sprayed with a second can of gas through the food tray slot.  *Id.*  Plaintiff continued to stand his ground and refused to comply with orders.  *Id.*  He was then sprayed with a third can of gas.  *Id.*  Then, the 5-man team hooked the winch up to the cell door preparing to force the door open.  *Id.*  Plaintiff stuck his left arm through the food slot and tried to stop the team from opening the cell door, but to no avail.  *Id.*  A fourth can of gas was sprayed on Plaintiff to get him away from the food tray slot in his cell door.  *Id.*

Using the winch, officers were able to get Plaintiff's cell door half way open.  *Id.*  Still, Plaintiff refused to exit his cell.  *Id.*  A fifth can of gas was sprayed at Plaintiff in an attempt to gain

his compliance with orders, but Plaintiff still refused. *Id.* Shortly thereafter, Plaintiff ran to the partially-opened cell door and tried to squeeze through. *Id.* Silguero claims that the cell door finally opened and Officer Arias knocked him down with a riot shield. *Id.* Plaintiff claims that the team members then grabbed him and beat him. *Id.* He was taken to the medical department where a nurse sutured a laceration on Plaintiff's cheek. *Id.* The nurse stated that Plaintiff's remaining injuries were minor. *Id.*

On December 4, 2009, Plaintiff was taken back to the medical department where he was seen by a physician's assistant, Charles Moxin. *Id.* Plaintiff claims that Moxin made a "cursory examination" and told him he was okay. *Id.* Moxin prescribed a ten-day supply of naproxen to treat Plaintiff's pain. *Id.* On December 7, 2009, Plaintiff was taken back to the medical department where Moxin told him he was okay and sent him back to his cell. *Id.* On December 9, 2009, x-rays were taken of Plaintiff's head and right hand. *Id.* Plaintiff was later transferred to the Montford Unit, then the Robertson Unit, where he claims to have been treated for psychological trauma. *Id.*

"To prevail on an eighth amendment excessive force claim, a plaintiff must establish that force was not 'applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm' and that he suffered an injury." *Eason v. Holt*, 73 F.3d 600, 601-02 (5th Cir. 1996) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Here, Plaintiff states no facts which could establish that the force was used against him maliciously and sadistically in an effort to cause harm. Plaintiff concedes that, immediately prior to the use of force, he took control of the food slot, jammed his cell door shut, covered his cell window with paper, pushed a mattress against his cell door, attempted to physically stop officers

from opening his cell door, and repeatedly refused to comply with directives given to him by prison guards.  Amended Complaint ¶ V.

While it is unfortunate that the situation escalated to the point that force was used, Plaintiff cannot prevail on this claim.  In situations such as this, "[prison officials] are entitled to wide-ranging deference." *Baldwin v. Stalder*, 137 F.3d 836, 840 (5th Cir. 1998) (finding that the use of mace to quell a disturbance caused by inmates on a bus did not constitute excessive force).  "The amount of force that is constitutionally permissible ... must be judged by the context in which that force is deployed." *Id.* (quoting *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)).  The use of force does not constitute cruel and unusual punishment when reasonably necessary to subdue a recalcitrant prisoner. *Clemmons v. Greggs*, 509 F.2d 1338, 1340 (5th Cir. 1975); *see Williams v. Hoyt*, 556 F.2d 1336, 1339-40 (5th Cir. 1977) (affirming jury verdict for the defendants where evidence was sufficient to show that mace was used only for the control of unruly prisoners and was, therefore, not excessive).  Plaintiff concedes that he engaged in extreme resistance to the efforts of prison guards in their attempts to restore order.  The Court finds that the use of force alleged by Plaintiff was the direct result of Plaintiff's own behavior, was applied in an effort to restore discipline, and was reasonable under the circumstances.

To the extent that he claims to have been denied medical care, Plaintiff cannot prevail.  In order to state a colorable claim for the denial of medical care under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  "Deliberate indifference" under the Eighth Amendment occurs only where a prison official subjectively knows of and

disregards a substantial risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996). A delay in medical care can rise to the level of a constitutional violation if the delay results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990). However, it is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim. *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993). As long as jail medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *See Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982). A disagreement over the appropriate medical treatment constitutes, at most, a possible claim of medical malpractice appropriately addressed under state law. *E.g., Estelle v. Gamble*, 429 U.S. at 107-08; *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979).

Under the facts alleged by Plaintiff, the standard for deliberate indifference is not met. The gravamen of Plaintiff's medical care complaint is that Defendants failed to provide him with the medical care that he thought was necessary. Such a complaint amounts to a disagreement as to the appropriate medical care rather than any denial thereof. Disagreements over medical care decisions are not actionable under the Civil Rights Act. *E.g., Estelle v. Gamble*, 429 U.S. at 107-08; *Varnado v. Lynaugh*, 920 F.2d at 321; *Fielder v. Bosshard*, 590 F.2d at 107. As long as jail medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *See Youngberg v. Romeo*, 457 U.S. at 322-23.

Plaintiff has not stated any facts which could demonstrate deliberate indifference on the part of Defendants. *See* Complaint ¶ V; Plaintiff's Answer to the Court's Question No. 2. In fact, Plaintiff concedes that he was seen by medical care personnel on numerous occasions, that his laceration was sutured, that he was provided with pain medication upon request, and that x-rays were taken of his head and hand. Assuming the truth of Plaintiff's factual allegations, he has failed to state a claim for denial of medical care.

In his answers to the Court's questions, Plaintiff presents claims of retaliation. State officials may not retaliate against an inmate for the exercise of a constitutionally protected right. *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995); *Gibbs v. King*, 779 F.2d 1040, 1046 (5th Cir. 1986). In order to show retaliation an inmate "must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). Causation requires a showing that "but for the retaliatory motive the complained of incident ... would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (quoting *Woods v. Smith*, 60 F.3d at 1166). This places a significant burden on the inmate. Mere conclusory allegations are insufficient to state a claim. *Woods v. Smith*, 60 F.3d at 1166; *Richardson v. McDonnell,* 841 F.2d 120, 122-23 (5th Cir. 1988). The inmate must produce direct evidence of motivation or "allege a chronology of events from which retaliation may plausibly be inferred." *Woods v. Smith*, 60 F.3d at 1166 (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)). Trial courts are required to carefully scrutinize civil rights actions based on claims of retaliation as those claims "must [] be regarded with skepticism." *Id.* (quoting *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)). A

plaintiff's bare assertion of retaliation, without any supporting facts, is insufficient to state a claim under 42 U.S.C. § 1983. *See Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995) (prisoner must show more that "personal belief" to establish retaliation).

Although he was given ample opportunity to state the facts underlying his complaint, Silguero has failed to allege any scenario which could show that, but for a retaliatory motive, the actions taken by Defendants would not have occurred. *See Plaintiff's Answers to the Court's Questions No. 3, 4, 5, 10 & 11.* Silguero's allegations of retaliation are conclusory in nature and, as such, fail to state a claim under the Civil Rights Act. Conclusory allegations and legal conclusions masquerading as factual allegations are insufficient to state a cognizable claim. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993); *see Van Cleave v. United States*, 854 F.2d 82, 84 (5th Cir. 1988) (requiring specific facts and noting that conclusory allegations are insufficient to maintain a claim under § 1983). Plaintiff's subjective belief that Defendants had retaliatory motives is insufficient to maintain this action. Silguero has failed to state facts which could demonstrate that, but for a retaliatory motive, the actions of Defendants would not have taken place.

Plaintiff was given the opportunity to expound on the factual allegations of his complaint by way of questionnaire. *See Eason v. Thaler*, 14 F.3d 8 (5th Cir. 1994) (requiring further development of insufficient factual allegations before dismissal as frivolous is proper); *Watson v. Ault*, 525 F.2d 886, 892-93 (5th Cir. 1976) (affirming use of questionnaire as useful and proper means for court to develop factual basis of *pro se* plaintiff's complaint). However, he failed to allege any facts which, if taken as true, would indicate that he is entitled to recovery under the Civil Rights Act.

The Court may dismiss a complaint filed by an inmate proceeding *in forma pauperis* if the Court determines that the action is frivolous.  28 U.S.C. § 1915(e)(2)(B)(i).  An action is frivolous if it lacks an arguable basis in either law or fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Henson-El v. Rogers*, 923 F.2d 51, 53 (5th Cir. 1991).  A complaint is without an arguable basis in law if it is "based on indisputably meritless legal theory."  *Neitzke*, 490 U.S. at 327.  The claims set forth in the case at bar have no arguable basis in law.

IT IS THEREFORE ORDERED that Plaintiff's complaint is hereby DISMISSED with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as frivolous.[1]

SO ORDERED this 17th day of December, 2012.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

[1] The Court notes that the Plaintiff, Jesus Silguero, has a history of filing federal lawsuits after creating prison disturbances, refusing to comply with orders, and causing prison officials to use force against him.  *See Silguero v. Pohlmeier*, No. 2:00-CV-218 (N.D. Tex. 2000) (gas sprayed into Silguero's cell after he refused to relinquish a set of handcuffs - case voluntarily dismissed); *Silguero v. Acheson*, No. 7:08-CV-201 (N.D. Tex. 2009) (force used against Silguero to restore order after he took control of the cell door food slot by first sticking his arm, then later his leg, through the slot - case dismissed as frivolous); *Silguero v. Chance*, No. 4:00-CV-717 (S.D. Tex. 2000) (allegations of excessive force by prison guards immediately after a "situation" - see order for more definite statement - case too old to view complaint on docket sheet - voluntarily dismissed); *Silguero v. Quada*, No. 4:00-CV-1841 (S.D. Tex. 2000 - documents not scanned - voluntarily dismissed); *Silguero v. Chance*, No. 4:01-CV-485 (S.D. Tex. 2001) (Silguero gassed by prison guards after refusing to allow a search of his cell - also claims of retaliation and destruction of property - case dismissed as frivolous); *Silguero v. Chance*, No. 4:01-CV-161 (force used against Silguero after he refused to remove paper and feces that he used to cover his cell window - case dismissed for want of prosecution); Silguero v. Williams, No. 7:09-CV-097 (N.D. Tex.) (force used against Silguero after he broke his cell table off the wall, jammed his cell door shut, and refused to comply with orders from prison guards - case dismissed as frivolous).